**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:23-CV-00524-CHL**

DAVID W.,[1]                                                                                    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,                                       Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Complaint filed by Plaintiff, David W. ("Claimant"). Claimant seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). (DN 1.) Claimant and the Commissioner each filed a Fact and Law Summary and/or supporting brief, and Claimant filed a reply. (DNs 11, 15, 16.) The Parties have consented to the jurisdiction of a Magistrate Judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 9.) Therefore, this matter is ripe for review.

For the reasons set forth below, the final decision of the Commissioner is **AFFIRMED**.

**I.    BACKGROUND**

On March 11, 2021, Claimant applied for supplemental security income ("SSI") under Title XVI. (R. at 17, 100, 108-10, 192-93, 198-204.) His application alleged disability beginning on November 1, 2019, due to PTSD, depression, anxiety, and cardiomyopathy. (*Id.* at 17, 100, 110.) Claimant's application was denied initially and again on reconsideration. (*Id.* at 123-30.)

At Claimant's request, Administrative Law Judge ("ALJ") Susan Brock ("the ALJ") conducted a hearing on Claimant's application on September 14, 2022. (*Id.* at 32-54.) Claimant

---

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.

attended the hearing by telephone with his non-attorney representative.[2] (*Id.* at 34.) An impartial vocational expert also participated in the hearing. (*Id.*)

During the hearing, Claimant testified to the following. He lives with his mother who has multiple sclerosis, and he helps work for her. (*Id.* at 37, 41.) He experiences social anxiety related to a childhood sexual trauma and has flashbacks five days per week. (*Id.* at 40-41.) He experiences nightmares and consistent fatigue from his prescribed medications. (*Id.* at 40-41, 46.) He does not like to be around people and doesn't like going into stores. (*Id.* at 41.) He has horrible concentration and "can't focus on just one thing at a time." (*Id.* at 41-42, 44.) He finds lots of things stressful, including the phone or doorbell ringing. (*Id.* at 42.) Claimant experiences persistent back pain and wears a back brace "all the time to do what little cleaning and stuff [around the house] [he] can." (*Id.* at 43.) He has muscle spasms in his back that run into his legs for thirty minutes at a time five to six times per week; his back pain causes him on average three bad days per week. (*Id.* at 45-47.) Sometimes when he reaches too far with his right arm, it causes a back spasm that takes three days to go away. (*Id.* at 45-46.) He uses marijuana five to six times a week for his back pain. (*Id.* at 44.) Otherwise, the medications he takes "keep [him] drained" and he is "constantly tired," lying down every day for an hour to an hour-and-a-half at a time. (*Id.* at 46.)

The ALJ issued an unfavorable decision on November 16, 2022. (*Id.* at 14-31.) Applying the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled, the ALJ made the following findings. First, the Claimant had not engaged in substantial gainful activity since March 11, 2021, his application date. (*Id.* at 18.) Second, Claimant had the following severe impairments: degenerative disc disease, cardiomyopathy, anxiety, depression, and PTSD. (*Id.*) Third, Claimant did not have an

---

[2] The hearing was held telephonically due to the COVID-19 pandemic with Claimant's consent. (*Id.* at 34, 155-57.)

impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.*) Fourth, Claimant had the residual functional capacity ("RFC") to perform light work with the following exceptions:

> [H]e [can] climb ramps and stairs, but never ladders, ropes or scaffolds. The claimant can occasionally stoop, kneel, crouch, and crawl. He can have frequent exposure to extreme cold and vibration. He should avoid all exposure to unprotected heights and dangerous machinery. The claimant can understand, remember and carryout simple, routine, repetitive tasks in a work setting having minimal variations and little independent judgment. He can have frequent interaction with supervisors and coworkers, and occasional interaction with the general public. He can make simple work-related decisions.

(*Id.* at 20.) Additionally at step four, the ALJ found that Claimant was unable to perform any of his past relevant work as a construction worker or furniture mover. (*Id.* at 26.) Fifth, and finally, considering Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Claimant could perform. (*Id.* at 26-27.) The ALJ concluded that Claimant was not under a disability from March 11, 2021, through the date of her decision. (*Id.* at 27.)

Claimant subsequently requested an appeal to the Appeals Council, which denied his request for review on August 17, 2023. (*Id.* at 1-6, 189-91, 291-93.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2024); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision.) Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Accordingly, Claimant timely filed this action on October 9, 2023. (DN 1.)

**II.   DISCUSSION**

The Social Security Act authorizes payments of SSI to persons with disabilities. *See* 42 U.S.C. §§ 1381-1383f. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see* 20 C.F.R. § 416.905(a) (2024).

### A. Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B. Five-Step Sequential Evaluation Process for Evaluating Disability

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled. 20 C.F.R. § 416.920 (2024). In summary, the evaluation process proceeds as follows:

4

 (1) Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

 (2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[3] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

 (3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

 (4) Does the claimant have the RFC to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

 (5) Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. § 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

 **C.** **Claimant's Contentions**

Claimant alleged that the ALJ erred in determining his RFC. (DNs 11, 16.) Specifically, Claimant argued that the ALJ's RFC analysis failed to adequately address the supportability factor

---

[3] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. § 416.909 (2024).

5

as required by 20 C.F.R. § 416.920c in her analysis of mental health opinion evidence, particularly the opinions of consultative examiner ("CE") Brendan K. Ryan, MS, LPP, ("CE Ryan"); Amy Nunn, APRN ("APRN Nunn"); and the state agency psychological consultants G. Stephen Perry, Ed.D. ("Dr. Perry") and Mary K. Thompson, Ph.D. ("Dr. Thompson"). (DN 11, at PageID # 895-900; DN 16.)

The applicable regulations set forth specific rules an ALJ must follow regarding opinion evidence. Pursuant to 20 C.F.R. § 416.920c, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" in the record regardless of its source.[4] 20 C.F.R. § 416.920c(a) (2024). Instead, an ALJ will evaluate the "persuasiveness" of a medical opinion by referencing the five factors listed in the regulation: supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 416.920c(a), (c). The regulations provide that the two most important factors are supportability and consistency and that an ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 416.920c(a), (b)(2). However, the regulations state that "it is not administratively feasible for [an ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions . . . in [the] case record"; thus, an ALJ is not required to explicitly discuss how he or she weighed the factors of relationship with the claimant,[5] specialization, and other factors.[6] 20 C.F.R.

---

[4] This language indicates that the new regulation has done away with the controlling weight and other old rules regarding the weight to be ascribed to medical opinions. 20 C.F.R. § 416.927(c)(2) (2024).

[5] In assessing this factor, the regulations require an ALJ to consider the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. § 416.920c(c)(3).

[6] The regulations provide that an ALJ will consider any "other factors that tend to support or contradict a medical opinion." 20 C.F.R. § 416.920c(c)(5). These factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim," "whether new evidence [ ] receive[d] after the medical source made his or her medical opinion . . . makes the medical opinion . . . more or less persuasive," and whether the medical source has "an understanding of [the] disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c)(5).

§ 416.920c(b)(1)-(2). Where two medical opinions reach different conclusions but are "equally well-supported . . . and consistent with the record," an ALJ is required to state how he or she considered the other "most persuasive" factors in making his or her decision. 20 C.F.R. § 416.920c(b)(3).

The Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the requirement to "articulate how [he or she] considered the medical opinions" and "explain how [he or she] considered the supportability and consistency factors" under the new regulations. 20 C.F.R. § 416.920c(b). *But see Adams v. Comm'r of Soc. Sec.*, No. 23-3284, 2023 WL 6366106, at *2 (6th Cir. Sept. 28, 2023) (noting that the new regulations "substantially reduce[ ] the ALJ's obligation to explain the basis for his or her assessment of medical opinions"); *Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 822 (6th Cir. 2020) (White, J. dissenting) (applying the new regulations and finding that "[t]he ALJ did not clearly analyze the supportability and consistency of the state consultants' assessments, as compared to other evidence in the record which supported [the plaintiff]'s claims"). However, district courts applying the new regulations within this circuit consistently apply the articulation requirement literally. *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. Aug. 13, 2021) ("The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source. Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation." (emphasis in original)); *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [her] reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313,

at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-CV-1364, 2021 WL 119287, at *! (N.D. Ohio Jan. 13, 2021) (finding that "the [new] regulations do require that the ALJ clearly explain his consideration of the opinions and identify the evidence supporting his conclusions").

Claimant challenged only the sufficiency of the ALJ's discussion of the supportability factor, not her discussion of consistency. Thus, the Court will only address the sufficiency of the ALJ's analysis of supportability below as to each of the opinions referenced by Claimant.

        **1.**     **CE Ryan's Opinion**

CE Ryan examined Claimant on June 29, 2021. (R. at 738-43) CE Ryan summarized Claimant's reports about his mental health history and activities of daily living. (*Id*. at 740-41.) In his mental status exam, CE Ryan noted that Claimant's attention, concentration, and recent and remote memory were adequate, and insight, judgment, short-term memory, and decision-making were fair. (*Id*. at 741.) He noted that Claimant had a cooperative attitude, a flat and sad affect, a depressed mood, below average to borderline fund of knowledge and intelligence, and intact abstract reasoning. (*Id.*) He noted that Claimant's coping skills were overwhelmed and that Claimant had skill deficits in communication, interpersonal relations, and activities of daily living. (*Id.*) CE Ryan assessed moderate limitations in three areas: Claimant's capacity to understand, remember, and carry out instructions related to simple repetitive tasks; Claimant's ability to tolerate the stress and pressure of day-to-day employment; and Claimant's ability to sustain attention and concentration in performing simple repetitive tasks. (*Id*. at 742.) CE Ryan assessed moderate to marked limitations in Claimant's capacity to respond appropriately to supervision, co-workers, and work pressures in a work setting. (*Id.*) In relevant part, CE Ryan diagnosed Claimant with PTSD and major depressive disorder. (*Id*. at 741.)

In her analysis of Claimant's RFC, the ALJ summarized pertinent findings from CE Ryan's June 2021 exam of Claimant. (*Id.* at 23-24.) In particular, she emphasized Claimant's neat and clean presentation with appropriate grooming and hygiene, flat facial expression when interacting with the examiner, cooperation with normal speech and normal eye contact during the exam, and that tests of his concentration were conducted with only one mistake by Claimant. (*Id.*) She found these exam notes largely consistent with the overall record. (*Id.* at 24.) Then, in her subsequent assessment of the persuasiveness of CE Ryan's opinion, she noted that she was persuaded in part by the same but rejected CE Ryan's opined moderate to marked limitation. (*Id.* at 25.) While she addressed in more detail the inconsistencies she perceived between CE Ryan's opinion and the overall record, as to supportability, she noted that same findings from CE Ryan's exam that she had highlighted in her discussion of Claimant's medical history contradicted in part CE Ryan's finding of a marked limitation. (*Id.*)

Claimant argued that this discussion did not comport with the ALJ's duty to discuss the supportability factor, which relates to the "objective medical evidence and supporting explanations presented by a medical source [ ] to support his or her medical opinion(s)." 20 C.F.R. § 416.920c(c)(1). Specifically, Claimant contended that the ALJ erred by not addressing certain findings in CE Ryan's report such as documented deficits in communication, interpersonal relations, and activities of daily living. (DN 11, at PageID # 896-97.) But "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004). In this case, given the findings from CE Ryan's report that the ALJ did cite, the Court cannot find that the lack of specific discussion of any perceived skill deficits by CE Ryan was an error. Certainly CE Ryan's observations regarding deficits in communication and interpersonal skills

9

supported his finding of a moderate to marked limitation, but the ALJ pointed to other findings in CE Ryan's report that did not relate to Claimant's ability to interact with CE Ryan. This is sufficient to comply with the articulation obligation as to supportability required by 20 C.F.R. § 416.920c(b)(1).

Claimant also criticized the ALJ for placing too much emphasis on "objective" findings as opposed to CE Ryan's observations of skill deficits, citing *Tammy T. v. Kijakazi*, No. 5:21-CV-1, 2022 WL 71995, at *12 (D. Vt. Jan. 7, 2022). (DN 11, at PageID # 897.) But *Tammy T.* is not binding on this Court and also appears inapposite of what the ALJ did in this case. The Court in *Tammy T.* emphasized the difference between a psychiatric symptoms and other kinds of symptoms, explaining "When a psychiatrist accepts what the patient is saying and incorporates their expression of their subjective experience into their notes and opinion, the court should rely on that opinion even if there is not any outwardly measurable manifestation of the impairment as would be available in physical impairment cases." *Tammy T.*, 2022 WL 71995, at *12 (citing *Flynn v. Comm'r of Soc. Sec. Admin.*, 729 F. App'x 119, 122 (2d Cir. 2018)). No portion of the ALJ's opinion suggests that she disregarded CE Ryan's observations of skill deficits based on the relationship those deficits might have to Claimant's reports of his own symptoms.

Accordingly, the undersigned finds no reversible error in the ALJ's analysis of CE Ryan's opinion.

### 2. APRN Nunn's Opinion

APRN Nunn was one of Claimant's treating providers, seeing Claimant as a patient approximately every two to three months beginning in 2019. (R. at 840.) She completed a Medical Impairment Questionnaire form regarding Claimant's impairments and limitations. (*Id.* at 840-45.) She described her clinical findings as follows: "Anxious appearing during psych eval. Reports

having anxiety/panic attacks frequently. Excessive worry and agoraphobia frequently." (*Id.* at 840.) She opined that Claimant had no useful ability to function in his ability to maintain attention for two hour segments, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. (*Id.* at 842.) She opined that Claimant was unable to meet competitive standards in terms of his ability to remember work-like procedures, sustain an ordinary routine without special supervision, make simple work-related decisions, work in coordination with or proximity to others without being unduly distracted, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, and deal with normal work stress. (*Id.*) APRN Nunn opined that Claimant had a marked limitation on his ability to interact with others and concentrate, persist, or maintain pace; she assessed a moderate limitation on his ability to understand, remember, or apply information and adapt or manage himself. (*Id*. at 844.)

In her analysis of Claimant's RFC, the ALJ emphasized that Claimant had been consistently seen by the same provider since 2019, his mental status exams were routinely normal, and that Claimant's "medications and plan of care remained stable over time suggesting they are effective." (*Id.* at 23-24.) She cited instances of Claimant repeatedly affirming that "his medications improved his mood an anxiety without side effects." (*Id.* at 24.) In her subsequent assessment of the persuasiveness of APRN Nunn's opinion, she found the same unpersuasive, stating:

> The providers own notes at B2F and B9F do not support such significant limitations. For instance, the opinion cites to observations such as the claimant's anxious appearance during evaluations. Yet at B9F, the claimant is explicitly described as not anxious over and over (B9F pp. 11, 13, 15, 18, 20). His treatment has remained routine and conservative and he reports good response to treatment for an individual with supposed inability to tolerate routine stress/pressures.

11

> Further, B2F and B9F described normal appearance, behavior, and speech for an individual incapable of working with or near others or unable to maintain a routine.

(*Id.* at 25.)

Claimant argued that the ALJ's supportability analysis was inadequate because it presupposed Claimant's anxiety disorder would persistently affect him and present itself during his appointments with APRN. Nunn. (DN 11, at PageID # 898-99.) Claimant also again asserted that the ALJ focused too much on objective evidence as opposed to APRN's "professional observation and assessment." (*Id.*) The Court finds the above discussion sufficient to comport with the ALJ's obligations under the applicable regulation. Claimant may disagree with the ALJ's conclusion, but the ALJ's discussion directly addressed why she felt APRN Nunn's opinion was not supported by APRN Nunn's own treatment records. As above with CE Ryan, the Court does not view the ALJ to have overfocused on "objective" evidence. Instead, the ALJ pointed out the discrepancies between APRN Nunn's own exam notes and mental status findings and her opinions as to his functioning. The ALJ's discussion did not suggest that she improperly assumed Claimant's anxiety disorder had no effect on him; instead, she merely pointed out his positive responses to APRN Nunn's own treatment suggested that he was not as limited as either he or APRN Nunn alleged. And Claimant cited no evidence of record contradicting the ALJ's conclusion. On balance, the Court finds the ALJ's conclusion supported by substantial evidence and finds no reversible error in the ALJ's analysis of APRN Nunn's opinion.

### 3. State Agency Psychological Consultants

State agency psychological consultants Dr. Perry and Dr. Thompson completed assessments in July and December 2021. (R. at 100-107, 110-117.) In his July 2021 evaluation, Dr. Perry adopted the RFC determination from a prior ALJ's opinion, opining that Claimant:

>   can understand, remember and carry out simple routine repetitive tasks in a routine work setting having minimal variations and little independent judgment for extended two-hour periods. . . . The claimant can have frequent interaction with supervisors and coworkers, and occasional interaction with the general public. He can make simple work-related decisions.

(*Id.* at 106.) In support, Dr. Perry noted that Claimant's daily activities, treatment notes from his providers, and findings from CE Ryan's examination all supported functioning similar to that assessed by the prior ALJ. (*Id.* at 102-03.) In her December 2021 evaluation, Dr. Thompson adopted Dr. Perry's prior findings and analysis, noting that Claimant had not alleged new or worsening conditions and had no additional treatment for his impairments. (*Id.* at 112-13, 116.) The ALJ found the assessments of Drs. Perry and Thompson persuasive, more persuasive that CE Ryan's, writing that Drs. Perry and Thompson's findings were supported by CE Ryan's "mental status testing results" and Claimant's history of semi-skilled work as well as certain findings from the treatment records. (*Id*. at 25.) Claimant argued that ALJ's analysis of the psychologists' opinions was deficient because it failed to discuss supportability, which he argued was grounds for an immediate remand. (DN 11, at PageID # 897-98.) But the Court finds the ALJ's explanation sufficient to comply with the regulations. As one district court has explained, the opinions of state agency medical and psychological consultants are uniquely situated in terms of the ALJ's ability to conduct a supportability and consistency analysis:

>   [T]he Court notes the inherent lack of clear delineation between supportability and consistency when an ALJ evaluates the opinion of a reviewer— like a state agency physician—who forms her opinion after a holistic review of the medical evidence of record. Consider, for example, a case in which there has been little or no change to the medical evidence of record between the time the reviewer issues her finding and the ALJ conducts a hearing. In that instance, the evidence upon which the reviewer supported her finding—the complete medical record at the time of her finding—would be virtually identical to the evidence with which the opinion is consistent or inconsistent—the complete medical record at the time of the ALJ's hearing. The ALJ is left in a position in which she is unable to consider supportability without simultaneously addressing consistency, and vice versa. A plaintiff might semantically allege error in such a case—saying that the ALJ only

13

> addressed consistency because she compared the reviewer's opinion to the entirety of the record. But the ALJ would have still fulfilled the purpose of the regulation: to give a fulsome review to medical opinions and prior administrative findings, paying particular attention both to how the opinions are internally supported and explained, and how they compare to the record as a whole.
>
> Contrast this with a medical opinion rendered by a treating physician. There, supportability and consistency are more clearly distinguished. The physician supports her opinion with her own treatment notes, objective medical findings, and experience with the plaintiff. Her opinion is consistent (or not) with the entire universe of the medical evidence of record.

*Tyrone H. v. Comm'r of Soc. Sec.*, No. 2:22-CV-3652, 2023 WL 2623571, at *6 (S.D. Ohio Mar. 24, 2023). *See also Griffin v. Kijakazi*, No. 2:22-CV-57-DCP, 2023 WL 3573734, at *9-11 (E.D. Tenn. May 19, 2023); *Elaine S. v. Comm'r of Soc. Sec.*, No. 3:22-cv-240, 2023 WL 262575, at *4 (S.D. Ohio Mar. 24, 2023).[7] This analysis is reflective of the deficiency in Claimant's argument here.  As Drs. Perry and Thompson did not examine Claimant, there are no individual objective findings from those reviewers from which the ALJ could have assessed supportability.  Instead, the ALJ properly considered the supportability of their opinions with respect to the other medical evidence of record that they reviewed in reaching their opinions.  Claimant did not point out any specific medical evidence not reviewed by Drs. Perry and Thompson that otherwise called into question either the supportability or consistency of their opinions that the ALJ should have and did not address.  In the absence of such evidence or argument, the Court finds the ALJ's analysis sufficient to satisfy the articulation requirement and rejects Claimant's argument that there was any procedural error necessitating a remand.

---

[7] *Reed v. Commissioner of Social Security*, No. 3:20-CV-02611-CEH, 2021 WL 5908381, at *6 (N.D. Ohio Dec. 14, 2021), cited in support by Claimant in his brief is distinguishable.  There, the Court found that "there [wa]s nothing the Court c[ould] construe as discussing supportability."  *Id.*  That is not the case with the ALJ's opinion in the instant case.

14

        **4.**      **RFC Generally**

Based on the conclusions above, the Court finds that the ALJ's RFC determination was supported by substantial evidence. Her analysis more than surpasses the threshold for substantial evidence, which is "not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting in part *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations. And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." (internal citation omitted)). Claimant did nothing more than point to other portions of the opinion evidence in the record he claimed supported an opposite conclusion to that reached by the ALJ, and he provided no specific discussion of individual medical records to support his argument. However, having found that her decision was supported by substantial evidence, this Court's role is not to second-guess the ALJ's conclusions. *Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108; *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

**III.   CONCLUSION AND ORDER**

For the reasons set forth above, IT IS HEREBY ORDERED that the final decision of the Commissioner is **AFFIRMED**. A final judgment will be entered separately.

Colin H Lindsay, Magistrate Judge
United States District Court

cc:    Counsel of Record
       February 20, 2025

15